Rockingham
No. 80-471

Town of Derry

v.

Benjamin C. Adams & a.

June 10, 1981

474

*Soule, Leslie, Bronstein & Zelin*, of Salem (*Lewis F. Soule* on the brief), by brief for the plaintiff.

*Fryer, Boutin & Warhall,* of Londonderry (*Edmund J. Boutin* on the brief), by brief for the defendants.

PER CURIAM. This case involves a petition for declaratory judgment brought under RSA 491:22 by plaintiff Town of Derry to determine the composition of the town's planning board subsequent to elections held at the town meeting on March 11, 1980. The Superior Court (*Bean,* J.) approved the Master's (*Charles T. Gallagher,* Esq.) recommendation that "[t]he planning board . . . consists of three members who were elected for three-year terms in 1978 and 1979, whose terms expire at the town meetings of 1981 and 1982 as the case may be, and when the successor of each of them has been elected and qualified. The other four members . . . are Edward J. Blanchard, Daniel C. Seluk, Benjamin C. Adams and Frederick H. Tompkins, whose terms expire at the 1981 town meeting and upon the election and qualification of their successors." The defendants, Benjamin C. Adams and May Casten, appealed.

In 1976, RSA 36:4 (Supp. 1975) read in pertinent part as follows:

"II. In the case of towns, the planning board shall consist of either five or seven members, at the option of the town meeting, and the membership may be filled as provided in subparagraph (a) or (b).

(a) The selectmen of the town may choose one selectman to act as an ex officio member, and appoint four or six other persons, depending upon whether the entire planning board includes five or seven members, respectively.

(b) The town, by majority vote at the town meeting, may decide to elect the members of the planning board. If such a procedure is adopted at the town meeting, the planning board members shall be elected at the next regular town meeting in the following manner:

(1) For a five member planning board, the town shall initially elect two members for a one year term, one member for a two year term and one member for a three year term. The fifth member shall be a selectman appointed by the selectmen, ex officio, whose term shall correspond to his official tenure. Thereafter the term of an elected planning board member shall be three years.

(2) For a seven member planning board, the town shall initially elect two members for a one year term, two members for a two year term and two members for

a three year term. The seventh member shall be a selectman appointed by the selectmen, ex officio, whose term shall correspond to his official tenure. Thereafter the term of an elected planning board member shall be three years.

(3) If a town with an appointed planning board votes to elect the planning board, the terms of office of the existing members of such board shall expire when the first election of planning board members is held."

The parties agree that on November 2, 1976, the town voted "in accordance with RSA 36:4 II(b), to elect a 7 member Planning Board; 2 members for a 1 year term; 2 members for a 2 year term; and 2 members for a 3 year term; the 7th member to be a Selectman appointed by the Selectmen . . . ." The master found that in succeeding years, the town elected two planning board members and the selectmen appointed one of their number to sit as the seventh member ex officio.

Effective July 1, 1979, the legislature enacted Chapter 410, Laws of 1979, which deleted subparagraphs (1), (2) and (3) from RSA 36:4 II(b) (Supp. 1975) and subsequently read in part as follows:

"410:4 Members of Planning Board. Amend RSA 36:4 (supp.) as amended by striking out said section and inserting in place thereof the following:

36:4 Personnel of a Planning Board. . . .

II. In the case of towns, the planning board shall consist of either 5 or 7 members, at the option of the town meeting, and the membership may be filled as provided in subparagraph (a) or (b).

(a) The selectmen of the town may choose one selectman to act as an ex officio member, and appoint 4 or 6 other persons, depending upon whether the entire planning board includes 5 or 7 members, respectively.

(b) The town, by majority vote at the town meeting, may decide to elect the members of the planning board. If such a procedure is adopted at the town meeting, the planning board members shall be elected at the next regular town election as provided in RSA 669:17."

During the 1980 election period, the town was inadvertently unaware of the 1979 amendment affecting RSA 36:4 II(b) (Supp. 1975). It notified the voters during the filing period that there were two openings on the planning board for a three-year term and also informed them of the need to fill a vacancy of an addi-

tional member for a one-year term. Three candidates filed for each of the three-year and one-year terms. The official election ballot instructed the voters to vote for "two" for the three-year terms and for "one" for the one-year term.

The result of the vote for the three-year terms was: Edward J. Blanchard, 1875 votes; Daniel C. Seluk, 1635 votes; and May Casten, 860 votes. The vote for the one-year term was: Benjamin C. Adams, 1103 votes; Frederick A. Tompkins, 1040 votes; and Peter N. Garafalo, 362 votes. The moderator declared Blanchard and Seluk as the elected candidates to the three-year terms and Adams as elected to the one-year term.

In early April 1980, the selectmen became aware of the 1979 amendment to RSA 36:4 II(b) (Supp. 1975) and that the ballot should have called for the election of a third planning board member to replace the ex officio selectman member. As provided for by RSA 36:7 IV (Supp. 1979), they appointed Paul P. Collette to fill what they understood to be a vacancy on the board. Although Mr. Collette had been sworn in by the town clerk, the chairman of the planning board, Benjamin C. Adams, refused to let him sit as a member of the board.

At a planning board meeting on April 24, 1980, defendant Adams, acting in his official capacity, stated his belief that because three people had filed for the three-year term, all three people should have been elected and that May Casten should fill the third three-year position despite the fact that the ballot instructed voters to vote for only two three-year members. He concluded that there was no vacancy on the board and that, therefore, the selectmen had no authority to appoint a person to fill the alleged vacancy. In the interim, defendant Casten attended planning board hearings but did not vote pending the resolution of whether she legally was a member of the board.

The town then brought a petition for declaratory judgment. After a hearing, the master ruled that the four candidates who had received the most votes should sit for one-year terms irrespective of the length of the term for which they had stood. He ruled that even though the form of the ballot did not conform to the changes mandated by the 1979 amendment to RSA ch. 36 (Supp. 1975), technical irregularities should not be allowed to disfranchise the voters. He further ruled that the 1979 amendment to RSA ch. 36 (Supp. 1975) "did away with three-year terms of elected planning board members and . . . deleted the provision for a selectman to sit ex-officio by appointment by the selectmen." The town, as well as the defendants, disagree with the results arrived at by the court.

The defendants argue that the 1979 amendment modified RSA 36:4 II(b) (Supp. 1975) to the extent that it deleted the provision for a selectman to sit ex officio by appointment by the selectmen, thereby creating a third vacancy to be voted upon. They urge upon us, however, that it did not alter the terms of elected planning board members. The town argues that it was not the intent of the legislature to abolish the position of the selectman appointed as an ex officio member. Although conceding that Chapter 410 of the Laws of 1979 established no terms of office for elected members, it argues that this was done inadvertently and is contrary to the legislative intent. We are not persuaded by the arguments of any of the parties.

■■■ In any statutory interpretation case, we first look at the language of the statute itself to determine legislative intent, and "[w]hen that language is plain and unambiguous," we need not look beyond the statute for further indications of legislative intent. *Silva v. Botsch*, 120 N.H. 600, 601, 420 A.2d 301, 302 (1980). "In other words, the legislative intent is to be found not in what the legislature might have said, but rather in the meaning of what it did say. (Citations omitted.) Hence this court cannot speculate upon any supposed legislative intent not appropriately expressed in the language of the act itself." *Corson v. Brown Prods., Inc.*, 119 N.H. 20, 23, 397 A.2d 640, 642 (1979); *see Sant Bani Ashram v. Dept. of Empl. Sec.*, 121 N.H. 74, 77, 426 A.2d 34, 36 (1981).

■■ An examination of section 4 of Chapter 410, Laws of 1979, reveals no ambiguity. The legislature in plain terms "[a]mend[ed] RSA 36:4 (supp.) as amended by *striking out* said section . . . ." (Emphasis added.) This leaves no doubt in our minds that the legislature intended that RSA 36:4 (Supp. 1975) be of no further force or effect. *See Frizzell v. Charlestown*, 107 N.H. 286, 288–89, 220 A.2d 742, 744–45 (1966). The 1979 amendment did not reenact subparagraphs (1), (2) and (3) of RSA 36:4 II(b) (Supp. 1975). Rather, it effectively abolished the three-year terms for elected board members and the ex officio member of the board, and directed in plain and unambiguous language that if a town decides to elect members of the planning board, they shall be elected as "provided in RSA 669:17." Consequently, we reject the argument of both parties that the legislature did not intend to abolish the three-year terms of members of the planning board.

■ By Chapter 410, Laws of 1979, the legislature codified "the election laws relative to the procedures to be followed in city elections, town elections and village district elections." N.H.H.R. JOUR.

448 (1979). In section 1 of Chapter 410, the legislature enacted two new chapters setting forth *specific* and *detailed* provisions for town and village district elections. RSA chs. 669 & 670 (Supp. 1979). Several references to terms of office contained in these new chapters demonstrate a legislative awareness of tenure in enacting the statutes. Indeed, RSA 669:17, which controls the election of officials under RSA 36:4 II(b) (Supp. 1979), contains two references to serving or appointing "until the next annual town election or meeting." Because the language present in both of these chapters clearly expresses the intent of the legislature, we "cannot speculate upon any supposed legislative intent not appropriately expressed in the language of the act itself." *Corson v. Brown Prods., Inc.*, 119 N.H. at 23, 397 A.2d at 642.

Defendant Casten, relying on *Keene v. Gerry's Cash Mkt., Inc.*, 113 N.H. 165, 304 A.2d 873 (1973), also argues that the instruction to the voters to "vote for two" was a mere technical irregularity in the form of the ballot and should not be applied to defeat the will of or to disfranchise the voters. She concludes that there existed three vacancies and that because there were three candidates who received votes, all of them should be declared elected irrespective of the instructions of the ballot.

 We are mindful that "[i]n resolving election difficulties . . . care must be taken that the matter is not decided on the basis of unwarranted technicalities. The goal must be the ascertainment of the legally expressed choice of the voters." *Opinion of the Justices*, 116 N.H. 756, 759, 367 A.2d 209, 210 (1976). Defendant Casten's reliance on *Keene v. Gerry's Cash Mkt., Inc.*, however, is misplaced. We hold that the instructions to the voters were not merely a matter of form but rather were substantive in nature and a material feature of the ballot. *Cf. State v. Cates*, 105 Tenn. 441, 446–47, 58 S.W. 649, 650 (1900). Based on the record before us, there is no doubt that candidates Blanchard, Seluk and Adams were the "expressed choice of the voters." We therefore do not hesitate to hold that they were duly elected members of the planning board, albeit for one-year terms or until the election and qualification of their successors. This is not so, however, with respect to the defeated candidates, Casten and Tompkins.

 The legislature also foresaw and provided for an oversight on the part of officials in the elective process. RSA 669:61 (Supp. 1979) provides that "whenever a town neglects . . . to fill an elective town office," that vacancy shall be filled as authorized by law. RSA 669:70 (Supp. 1979) further provides that vacancies on a town planning board shall be filled in accordance with RSA 36:7 (Supp.

1979), which in turn provides that a vacancy for an elected member shall be filled by the selectmen until the next election. We therefore hold that a vacancy on the board existed and that the selectmen properly appointed Paul P. Collette.

■ We have not addressed any policy arguments "[b]ecause the function of this court is not to make the laws, but to interpret them, [and] any public policy arguments relevant to the wisdom of this statute and its consequences should be addressed to the General Court." *Logan v. Logan*, 120 N.H. 839, 843, 424 A.2d 403, 405 (1980).

Furthermore, we are convinced that the legislature knew what it was accomplishing by adopting Chapter 410, Laws of 1979. In support of our conclusion we note that N.H.S. JOUR. 1545 (1979) represents Senator Conley as having said:

> ". . . There has been a lot of hard work done on this bill by a lot of people. The people of the House have gone over it, step by step. The secretary of state's office is in approval of it. The attorney general's office has gone over it page by page and it has also been scrutinized by some members of the Ballot Law Commission and these people [who] do know a little something about election laws, Mr. President, are in favor of this bill."

*Exceptions sustained in part,*
*overruled in part.*